UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. BRADLEY BREEDEN,<br><br>     Plaintiff,<br><br>     v.<br><br>VK KRUPA CORPORATION d/b/a COZY CORNER MOTEL, and SONALBEN K. VYAS,<br><br>     Defendants. | Civil Action No. 20-30157-MGM |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR A NEW TRIAL
(Dkt. No. 94)

September 27, 2024

MASTROIANNI, U.S.D.J.

## I.  INTRODUCTION

After falling down the stairs at the Cozy Corner Motel in Williamstown, Massachusetts, Dr. Bradley Breeden ("Plaintiff") commenced this action sounding in negligence under Massachusetts state law. He brought his claim against the motel's owner, VK Krupa Corporation ("Defendant"), and the President of VK Krupa Corporation, Sonalben K. Vyas; and the case proceeded to trial.[1] The jury found Plaintiff failed to prove Defendant was negligent. (Dkt. No. 87.) Final judgment entered on August 6, 2024. (Dkt. 93.)

Plaintiff now seeks a new trial pursuant to Fed. R. Civ. P. 59. As grounds for this request, Plaintiff argues (i) this court erred in its handling of Defendant's expert, James Younger ("Younger");

---

[1] Sonalben K. Vyas was dismissed by stipulation of the parties. (Dkt. No. 89.)

and (ii) this court erred in refusing to allow Plaintiff's experts to testify regarding the relationship between photometric measurements and certain building codes inapplicable to the motel as a matter of law. In response, Defendant argues the court did not err in its handling of *Younger* and the expert evidentiary issue was settled in this court's orders at Docket Nos. 67, 70, and 74. For the following reasons, the court concludes a new trial is unwarranted.

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 59, "[t]he court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows: after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). As interpreted by the First Circuit, this means the court "may grant a motion for a new trial 'if the verdict is against the demonstrable weight of the credible evidence,' or if it 'results in a blatant miscarriage of justice.'" *Boniface v. Viliena*, No. 17-CV-10477-ADB, 2024 WL 1513417, at *1 (D. Mass. Apr. 8, 2024) (quoting *Foisy v. Royal Maccabees Life Ins. Co.*, 356 F.3d 141, 146 (1st Cir. 2004)). In considering a Rule 59 motion, the court may "independently weigh the evidence," *Cham v. Station Operators, Inc.*, 685 F.3d 87, 97 (1st Cir. 2012) (internal citation omitted), because it possesses "broad legal authority" when determining whether a new trial is necessary, *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). But "trial judges do not sit as thirteenth jurors, empowered to reject any verdict with which they disagree"; therefore, the court "cannot displace a jury's verdict merely because he disagrees with it or because a contrary verdict may have been equally … supportable." *Id.* at 436 (internal quotation marks omitted).

## III. DISCUSSION

The court will first address Plaintiff's arguments related to *Younger*, before turning to Plaintiff's arguments related to photometric evidence.

### A.  James Younger

Plaintiff raises four arguments with respect to the court's handling of the defense expert,

Younger. The first argument is explicitly developed, while the remaining three arguments are implicit. These implicit arguments are underdeveloped, meaning they could be deemed waived. *See Brox v. Woods Hole,* 706 F. Supp. 3d 151, 158 n. 15 (D. Mass. 2023). But, in the interest of completeness, the court will address each in turn.

Plaintiff first contends Younger should have been sequestered during the presentation of Plaintiff's case. But no motion requesting sequestration was filed by either party. Rather, the issue was first raised orally on the second day of trial. Once raised, the court inquired why it was necessary to sequester an expert witness, as procedure allows such a witness offering an opinion to view other testimony. Plaintiff's counsel did not press the issue further by, for example, citing the federal rules or case law supporting his request. The court considers this acquiescence a form of waiver. And waiver of an issue during trial denies a party the ability to rely on the issue when pressing a Rule 59 motion. *See Matton v. White Mountain Cable Const. Corp.*, 190 F.R.D. 21, 22-23 (D. Mass. 1999).

However, even assuming sequestration was not waived, it is not grounds for a new trial. Federal Rule of Evidence 615 governs sequestration. Rule 615 states: "[a]t a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony. Or the court may do so on its own." Fed. R. Evid. 615(a). The rule then goes on to read in part, "[b]ut this rule does not authorize excluding: … (3) any person whose presence a party shows to be essential to presenting the party's claim or defense." Fed. R. Evid. 615(a)(3).

Here, Younger was an expert witness; he was not a fact witness. Because he was an expert, the exception contained in Rule 615(a)(3) is implicated. As the advisory committee notes indicate, "[this] category contemplates such persons as … an expert needed to advise counsel in the management of the litigation." Fed. R. Evid. 615 advisory committee's note (1972). Courts in the First Circuit, therefore, commonly hold "there is 'little if any reason to sequester a witness who is to testify in an expert capacity only and not to the facts of the case.'" *Bartlett v. Mut. Pharm. Co.*, No. 08-CV-358-JL,

2010 WL 3092649, at *9 (D.N.H. Aug. 2, 2010) (quoting *United States v. Lussier,* 929 F.2d 25, 30 (1st Cir.1991)); *Echavarria v. Roach,* No. 16-CV-11118-ADB, 2022 WL 606076, at *3 (D. Mass. Mar. 1, 2022) (exempting experts from sequestration order); *see also* Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6245 (2d. ed.) ("Accordingly, the cases commonly approve the designation of experts as essential under Rule 615(c) [the prior designation for Rule 615(a)(3)].").[2] In addition, an expert "may rely on other witness's testimony or other expert conclusions to form an opinion" without violating Fed. R. Evid. 703. *Iconics, Inc. v. Massaro,* 266 F. Supp. 3d 461, 469 (D. Mass. 2017); *see also* Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6245 (2d. ed.) ("The inclusion of experts in this category is consistent with Rule 703, which permits expert witnesses to base opinion on the testimony of other witnesses."). Moreover, Plaintiff suffered no prejudice from Younger's presence at trial because Younger had already reviewed the depositions of Plaintiff's witnesses and read the reports of both of Plaintiff's proposed experts. (Dkt. No. 45-1 at 12.) Accordingly, sequestration is not a basis for a new trial.

Next, Plaintiff contends Younger's testimony indicating Defendant's building would comply

---

[2] In response, Plaintiff points to seven out-of-circuit cases as supporting his position, but these cases do not aid his argument. Rather, they make apparent the usual practice of federal courts is not to sequester experts. For example, one case expressly states, "[t]he presence of experts is allowed despite the general exclusion when their presence is essential to the presentation of the cause." *Skidmore v. Nw. Eng'g Co.,* 90 F.R.D. 75, 76 (S.D. Fla. 1981). Another case notes, "[b]ecause Rule 615 is designed to preclude fact witnesses from shaping their testimony based on other witnesses' testimony, it does not mandate the sequestration of expert witnesses who are to give *only* expert opinions at trial." *Opus 3 Ltd. v. Heritage Park, Inc.,* 91 F.3d 625, 629 (4th Cir. 1996). And a third case explains, "[e]xpert witnesses clearly fall within Rule 615(3)'s exception." *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.,* 993 F.2d 1201, 1209-10 (5th Cir. 1993). The remaining four cases do not address expert witnesses, or they are examples of appellate courts affirming a trial court's refusal to sequester witnesses. *United States v. Ell,* 718 F.2d 291, 292-93 (9th Cir. 1983) (discussing fact witnesses); *Wood v. Sw. Bell Tel. Co.,* 637 F.2d 1188, 1194 (8th Cir. 1981) (finding refusal to sequester was not prejudicial); *United States v. Rivera,* 971 F.2d 876, 889-90 (2d Cir. 1992) (upholding refusal to sequester); *Abbey v. United States,* 103 Fed. Cl. 417, 425 (Fed. Cl. 2012) (referring to fact witnesses, but also exempting certain witnesses from sequestration).

with the modern building code was so prejudicial as to justify a new trial. However, the court sustained Plaintiff's objection to that testimony and ordered it stricken. (Dkt. No. 90 at 18-19.) Specifically, the court told the jury as follows: "That whole statement, or the entire part of the testimony of 'if they were built today,' is stricken. Completely stricken. So all of the other testimony is allowed. But the testimony regarding if they were built today is stricken." (*Id.* at 19.) "It is routinely presumed that jurors will follow curative instructions and put aside matters that the trial court determines have been improperly admitted," *United States v. Bradshaw*, 281 F.3d 278, 285 (1st Cir. 2002); and here, Plaintiff has done nothing to overcome this presumption. The court also notes Plaintiff's counsel responded to the curative instruction by stating, "[t]hat corrects my problem, your Honor." (Dkt. No. 90 at 19.) And "[w]hen an issue is 'unmistakably on the table' and a party 'signif[ies] agreement that there was nothing objectionable,' the issue is waived." *Bell v. O'Reilly Auto Enterprises, LLC*, 626 F. Supp. 3d 141, 164 (D. Me. 2022) (quoting *United States v. Simon*, 12 F.4th 1, 60 (1st Cir. 2021)), *appeal dismissed,* No. 22-1711, 2022 WL 19224931 (1st Cir. Dec. 2, 2022). Consequently, the court's curative instruction provides no basis for a new trial.

In a third argument, Plaintiff speculates that an ill-defined improper interaction occurred between Defendant's counsel and Younger during the trial's lunch break. (Dkt. No. 94 at 3-4.) It is then claimed Younger lied on the stand. (Dkt. No. 94 at 5-6.) Fraud on the court, which is the apparent implication of Plaintiff's argument, must be proven by "clear and convincing evidence" and the party asserting fraud must show "the fraud foreclosed full and fair preparation or presentation of its case." *Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 285 (1st Cir. 1993). But the court "afford[s] no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas De P.R. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (internal citations omitted; alteration added). Absent the conclusory statements and speculation advanced in his briefing, Plaintiff offers no support for his

claim Younger testified falsely, nor does Plaintiff offer any evidence to support his implied allegation that Defendant's counsel played a role in encouraging, securing, or knowingly assisting the presentation of false evidence. These unsupported allegations of wrongdoing are not a basis for a new trial.

Finally, Plaintiff implies it was unfair that Defendant's expert watched the trial, while his own expert did not. But Plaintiff's counsel contemplated the need to keep his expert in court well before the end of his testimony. (Dkt. No. 91 at 52.) The court also specifically told Plaintiff's expert to check with counsel regarding whether he should stay in court. (Dkt. No. 91 at 63.) Based on the foregoing, the court concludes the decision to send Plaintiff's expert home was a strategic choice by Plaintiff's counsel. A strategic choice by Plaintiff's counsel, however, is not grounds for a new trial. *Cf. Chang v. Smith,* 778 F.2d 83, 86 (1st Cir. 1985) ("Rule 60(b) [and Rule 59(a)] cannot be used to relieve a litigant from improvident strategic choices." (alteration added)); *Fisher v. Kadant, Inc.*, 589 F.3d 505, 513 (1st Cir. 2009) ("That a strategic choice may have backfired is not a ground for relief from judgment."); *Salgado Colon v. Hosp. Hermanos Melendez, Inc.*, No. 3:19-CV-01797-JAW, 2022 WL 17833042, at *4 (D.P.R. Dec. 21, 2022) ("Instead, the Defendant has made another strategic choice … only to complain about a situation largely of its own making."). Thus, Plaintiff's Younger-related arguments are not grounds for a new trial.

### B. Photometric Evidence

In a second argument for a new trial, Plaintiff seeks to re-litigate the court's previous exclusion of certain expert testimony proffered by Plaintiff. (Dkt. Nos. 67, 70, and 74.) Specifically, Plaintiff argues questions he posed on cross-examination of Kashyap Vyas ("Vyas") and Younger "opened the door," thereby requiring the court allow the following: (1) testimony asserting Defendant's motel failed to comply with building code provisions not applicable to the structure as a matter of law; and (2) testimony from an expert who was unaware Massachusetts had its own building code containing a

grandfather clause.[3] The court does not agree and ruled at trial that the Plaintiff could not open his own door. (Dkt. No. 90 at 27-32.)

Under generally recognized evidentiary principles, when one party introduces otherwise inadmissible evidence at trial, the other party has "the right to introduce [otherwise inadmissible] evidence to counter [the] claim." *United States v. Brown*, 669 F.3d 10, 24 (1st Cir. 2012) (alteration added); *see also England v. Reinauer Transp. Companies, L.P.*, 194 F.3d 265, 273-74 (1st Cir. 1999) (declining to find testimony on direct was sufficient to open the door to inadmissible evidence). But "one cannot open the door for one's own evidence; it requires some action by the opponent." Wright & Miller, 21 Fed. Prac. & Proc. Evid. § 5039.1 (2d ed.). Or, stated slightly differently:

> The party who seeks to benefit from the "door" having been "opened" cannot be the initial cause of the admission of the triggering testimony or evidence; in other words, a party cannot trigger the "opening of the door" to his or her own benefit by volunteering references to evidence known to be inadmissible, thereby causing opposing counsel to question the party on the volunteered statement. This extends to counsel for a party as well, so that counsel for one party cannot make references to particular inadmissible evidence during an opening statement, and then claim that the opposing party has "opened the door" to such evidence by addressing the issue on direct examination.

164 Am. Jur. Trials 479, § 5 (internal citations omitted). Ultimately, when the door is not opened during direct examination, a party may not "smuggle in" evidence by asking the opposing party questions on cross-examination designed to elicit responses which would violate prior evidentiary rulings. *Cf. United States v. Morla-Trinidad,* 100 F.3d 1, 5 (1st Cir. 1996) ("Thus, the government may not 'smuggle[] in' the impeaching opportunity with a cross-examination that has 'too tenuous a

---

[3] As the court may weigh the evidence in considering this motion, it notes Plaintiff's direct testimony did not place blame for the fall on lighting. Plaintiff observed the staircase was darker relative to other parts of the motel, but he did not state this caused him to fall. Rather, Plaintiff mentioned (i) carrying a suitcase, (ii) his foot falling off the stair's tread, and (iii) losing his grip on the railing. The jury was free to accord any amount or no amount of significance to the differences in lighting. It was also free to conclude a person of ordinary prudence would have exercised a degree of caution while navigating the stairs.

connection with any subject opened upon direct examination.'" (quoting *United States v. Havens*, 446 U.S. 620, 625 (1980) (alteration in original))).

Here, Vyas and Younger said nothing on direct examination which opened the door to the admission of inadmissible testimony. As to Vyas, he was asked approximately eighteen questions on direct examination. (Dkt. No. 90 at 3-6.) None of these questions referred to lighting. Rather, the first mention of lighting came during cross-examination, when Plaintiff's counsel asked Vyas if he knew what a "foot-candle" was. (Dkt. No. 90 at 7.) After indicating he did, Vyas proceeded to confirm the artificial lighting at the motel's front desk was brighter than the artificial lighting on the stairwell. (Dkt. No. 90 at 9.) Similarly, Younger did not testify on direct examination regarding lighting. Instead, on cross-examination, the following exchange between Younger and Plaintiff's counsel occurred:

> Q. And you also opined that you thought the illumination in the Cozy Corner was okay because everything was above one foot-candle, correct?
>
> A. That is correct.
>
> Q. And that's not true, is it, sir?
>
> A. No. That -- that -- my statement is correct. My measurements showed over one foot-candle; it is correct.

(Dkt. No. 90 at 26.) It was Plaintiff's choice to wade into the area of lighting and he cannot now complain about the result. By contrast, Defendant's counsel stated she had no intention of addressing lighting on either direct examination or re-direct. (Dkt. No. 90 at 32.) Consequently, this testimony provided no basis for Plaintiff to introduce inadmissible evidence.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a new trial (Dkt. No. 94) is DENIED.

It is So Ordered.

 /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge